# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANTOINE J. MURPHY,**

        **Petitioner,**

        v.                                            **Case No. 04-C-108**

**WARDEN PHIL KINGSTON,**

        **Respondent.**

## ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS

Antoine J. Murphy ("Murphy") is a prisoner incarcerated pursuant to a state court judgment. On January 30, 2004, Murphy petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case was randomly assigned to the Honorable Charles N. Clevert and on April 28, 2004, Judge Clevert screened Murphy's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and order the respondent to answer the petition. On March 18, 2005, this case was reassigned to this court upon all parties' consent to the full jurisdiction of a magistrate judge.

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in <u>Williams v. Taylor</u>, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court; or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme

Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under section 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, --- U.S. ---, 126 S.Ct. 969, 974 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, ----, 125 S.Ct. 2317, 2325 (2005)).

And finally, if the petitioner demonstrates constitutional error under section 2254(d), he still may not be entitled to habeas relief where such error is deemed harmless; that is, the error could not have had

a substantial and injurious effect or influence on the jury's verdict. O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (internal citations omitted).

With the § 2254(d) and (e)(1) standards in mind, the court will now turn to the issues raised by Murphy.

## ANALYSIS

Murphy raises three grounds for relief. First, he argues that his trial counsel was ineffective for not more effectively challenging the intent element of the crime. Second, he argues that his appellate counsel was ineffective. Third, he argues that there was insufficient evidence to sustain his conviction for attempted homicide.

**Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that the Wisconsin court's decision was either contrary to, or the based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1) standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant, under the second prong, the court does not need to consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

Murphy's two claims of ineffective assistance of counsel are related; he argues that his post-conviction counsel was ineffective for failing to argue that his trial counsel was ineffective. Thus, both these matters may be addressed by analyzing the conduct of his trial counsel. If his trial counsel was not ineffective, Murphy's appellate counsel could not have been ineffective for having failed to make this argument.

The court of appeals denied Murphy's petition because Murphy failed to present sufficient facts to enable the court to review the claims that Murphy's trial counsel was ineffective. Thus, Murphy failed to meet his burden to demonstrate that the result of the proceedings would have been different but for his attorney's alleged errors.

Although Murphy fails to provide to this court any factual support for his claim of ineffective assistance of counsel, the court is able to better understand the basis for Murphy's claims by reading the petition for review he filed with the Wisconsin Supreme Court, provided as Exhibit O to the respondent's answer. In his petition, Murphy argues that his trial counsel was ineffective for not exploring other avenues by which to negate the intent to kill element of attempted first degree homicide. Apparently, Murphy's trial counsel attempted to challenge the intent element by arguing that the fact of the victim's survival is evidence of a lack of intent; if Murphy intended to kill the victim, the victim would be dead. Even if this argument may not be the most effective in challenging the element of intent, there is absolutely no indication that there were any other avenues available to Murphy's counsel. If there were, Murphy fails to present any such arguments. When a weak argument is the only argument available to a defense attorney, it certainly is not unreasonable for the attorney to make that argument rather than remain silent and effectively concede an element of the crime. Thus, this court is not able to say that Murphy's trial counsel's argument was objectively unreasonable. Additionally, because there is no evidence to indicate that Murphy did not intend to kill the victim when he shot him, Murphy has failed to demonstrate that any alleged error was prejudicial.

Because Murphy's trial counsel was not ineffective, it was not unreasonable for his appellate counsel to fail to raise this argument. Therefore, it is the conclusion of this court that the court of appeals' conclusion was not contrary to, or involved an unreasonably application of the Strickland precedent. **Sufficiency of the Evidence**

A defendant's conviction violates due process if it is based upon evidence from which "no rational trier of fact could find guilt beyond a reasonable doubt." Wright v. West, 505 U.S. 277, 290 (1992) (quoting Jackson v. Virginia, 443 U.S. 307, 317 (1979)).

In its September 19, 2001 decision, State v. Murphy, (No. 00-1283-CR), in which the court of appeals rejected Murphy's arguments that the evidence was insufficient to sustain his conviction, the court said the following:

> The evidence presented at trial was clearly sufficient to support a finding that Murphy intended to kill the victim, Warren Bergman. Testimony at trial indicated that Murphy, Maurice George, and Devontre Cottingham were driving around on the night of September 11, 1997, when they noticed Bergman, who was described in the testimony as a "lick," or an easy target for a robbery. Murphy testified that upon seeing Bergman, he and George got out of the car. Murphy testified that he took a sawed-off rifle out of the hatchback and gave it to George. The testimony indicated that George then approached Bergman and pointed the gun at him, at which point Bergman handed his wallet to George. Murphy testified that he walked up as Bergman was in the process of handing his wallet to George, and that he and George then started to run away. Both Murphy and George testified that Bergman then started to yell and run after them.
>
> Both George and Murphy testified that although George had the gun when they first started to run, Murphy took it from him. In addition, Murphy admitted at trial that he fired two shots at Bergman. In a statement made to police after the shooting and admitted into evidence at trial, Murphy stated that he "turned and fired twice." This was consistent with the testimony of Bergman, who testified that one of the robbers "turned around and shot at [him]," and that he saw the gun pointed at him. A bystander near the scene of the shooting also testified that he observed a drawn gun, and recalled "about three shots aimed at the victim." This witness also testified that before the shooting he observed Murphy walk over to where George was robbing Bergman, and that Murphy was "kind of giggling." This testimony was consistent with a statement made to the police by Cottingham, Murphy's accomplice, who testified that prior to the robbery they were "pumped up" and "excited" about what was to occur.
>
> Evidence indicated that Bergman was shot in the lower abdomen, that he suffered extensive damage to his large and small intestines, and that when seen at the

emergency room his vital signs were unstable and he was deteriorating rapidly. Medical testimony indicated that the injuries were life threatening.

Testimony by a firearms expert also indicated that the sawed-off rifle which Murphy used to shoot Bergman did not have a "hair trigger," and that the "trigger pull" for this weapon was approximately eight and one-quarter pounds. In addition, each firing required a separate pull on the trigger.

Based upon this testimony, the jury could find beyond a reasonable doubt that Murphy intended to kill Bergman. The jury could infer that he took the gun from George as they were running for the purpose of killing Bergman, either out of anger or for the purpose of preventing further pursuit. Although Murphy testified at trial that he did not turn around and that he fired the gun backwards to scare Bergman off, the jury was entitled to reject this testimony and to conclude, based upon Bergman's testimony and Murphy's statement to the police, that Murphy turned and pointed the gun at Bergman. In conjunction with the testimony that Murphy fired the gun two times, the evidence regarding the amount of force required to pull the trigger, the testimony regarding Murphy's giddiness and agitated state of mind, and the life-threatening injuries inflicted upon Bergman, the jury could reasonably conclude that when Murphy turned and fired, he intended to kill Bergman. Murphy's testimony that he was thirty feet from Bergman when he fired the shots could have been found incredible by the jurors and, even if believed, did not preclude them from finding that he intended to kill Bergman.

Having reviewed the trial transcripts, this court finds that the court of appeals' conclusion that there was sufficient evidence so that a reasonable jury could conclude that Murphy intended to kill the victim, is not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Therefore, Murphy is not entitled to federal habeas relief on this basis.

**IT IS THEREFORE ORDERED** that Murphy's petition for a writ of habeas corpus is **denied**. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 3rd day of January, 2007.

BY THE COURT:

s/Aaron E. Goodstein
AARON E. GOODSTEIN
U.S. Magistrate Judge